The document below is hereby signed.

Signed: January 3, 2014



S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re                           )
                                )
ROBERT WILLIAM HALL,            )     Case No. 12-00753
                                )     (Chapter 11)
              Debtor.           )     For Publication in West's
                                )     Bankruptcy Reporter.

MEMORANDUM DECISION RE DEBTOR'S
MOTION SEEKING SANCTIONS AND DAMAGES FOR
<u>VIOLATION OF THE AUTOMATIC STAY AND FALSE IMPRISONMENT</u>

The debtor has filed a *Motion to Show Cause Why Sanctions Should Not Be Imposed on the Parties Named Below for Violating the Automatic Stay and Damages for False Imprisonment* (Dkt. No. 63).  The *Motion* will be denied for the following reasons.

I

BACKGROUND

The debtor owns a unit at a condo property in Ocean City, Maryland.  Mann Properties manages the condo property.  Coral Seas Homeowners' Association ("Coral Seas") is the property's homeowners' association.  As previously ruled, part of the *Motion* must be dismissed as seeking damages for prepetion misconduct

that, under Fed. R. Bankr. P. 7001, must be pursued via an adversary proceeding complaint.  What remains is a claim that Mann Properties and Coral Seas violated the automatic stay of the Bankruptcy Code (11 U.S.C.) contained in 11 U.S.C. § 362(a). That claim must be dismissed for the reasons that follow.

The debtor filed the petition commencing this case on November 15, 2012.  Prior to the commencement of the case, Mann Properties and Coral Seas withheld from the debtor the condo's access code to a storage area in which the debtor had stored various property, thereby effectively obtaining possession of that property.  The debtor sent an e-mail on November 15, 2012, and then a letter on November 27, 2012, to the attorney for Mann Properties and Coral Seas demanding that they give him the access code.  On November 29, 2012, in response to the November 27, 2012 letter, Coral Seas and Mann Properties provided the access code to the debtor.  The debtor contends that the delay in providing the access code and the consequent continued retention of possession of his personal property constituted a violation of the automatic stay, presumably meaning, specifically, 11 U.S.C. § 362(a)(3), which bars any act to exercise control over property of the estate.

## II

### THE VARYING VIEWS OF § 362(a)(3)

The courts are divided as to the proper interpretation of § 362(a)(3).

A.

<u>The D.C. Circuit View</u>

Controlling precedent in this jurisdiction limits the applicability of 11 U.S.C. § 362(a)(3), and requires the conclusion that Mann Properties and Coral Seas did not violate the automatic stay by failing to provide the debtor with the access code and continuing thereby to retain possession of his personal property upon the commencement of this bankruptcy case. As noted in *United States v. Inslaw, Inc.*, 932 F.2d 1467, 1471 (D.C. Cir. 1991):

> Section 362(a) provides that the filing of a bankruptcy petition operates as a stay, applicable to all entities, of--
>   (3) *any act* to obtain possession of property of the estate or of property from the estate or to *exercise control over property of the estate* . . . .

11 U.S.C. § 362(a) (1988) (italics in original).  In *Inslaw*, 932 F.2d at 1474, the court of appeals held that § 362(a)(3) was not violated by an entity's failure, upon the filing of the petition, to cure alleged prepetition misconduct.  The court of appeals explained:

> The automatic stay, as its name suggests, serves as a restraint only on *acts to gain possession or control* over property of the estate.  *Nowhere in its language is there a hint that it creates an affirmative duty to remedy past acts . . . as soon as a debtor files a bankruptcy petition.*  The statutory language makes clear that the stay applies only to *acts* taken after the petition is filed.

*Id.* (emphasis added and citations omitted).  In arriving at this

3

view of the limited role of the automatic stay, the court of

appeals noted:

> The object of the automatic stay provision is essentially
> to solve a collective action problem--to make sure that
> creditors do not destroy the bankrupt estate in their
> scramble for relief . . . . Since willful violations of
> the stay expose the offending party to liability for
> compensatory damages, costs, attorney's fees, and, in
> some circumstances, punitive damages, . . . it is
> difficult to believe that Congress intended a violation
> whenever someone already in possession of property
> mistakenly refuses to capitulate to a bankrupt's
> assertion of rights in that property.

*Inslaw*, 932 F.2d at 1473 (citation and footnote omitted).

Accordingly, under the reasoning of *Inslaw*, it is only an

affirmative act to change control of property of the estate that

can give rise to a violation of § 362(a)(3).  In short,

§ 362(a)(3) does not bar continued retention of property seized

prepetition.  *See In re Bernstein*, 252 B.R. 846 (Bankr. D.D.C.

2000); *In re Young*, 193 B.R. 620 (Bankr. D.D.C. 1996).[1]

---

[1]   Other courts take a similar view of § 362(a)(3).  *See,
e.g., Barringer v. Eab Leasing (In re Barringer)*, 244 B.R. 402,
407-08 (Bankr. E.D. Mich. 1999); *In re U.S. Physicians, Inc.*, 235
B.R. 367, 375 (Bankr. E.D. Pa. 1999); *In re Fitch*, 217 B.R. 286,
291 (Bankr. S.D. Cal. 1998); *Brown v. Joe Addison, Inc. (In re
Brown)*, 210 B.R. 878, 884 (Bankr. S.D. Ga. 1997); *Spears v. Ford
Motor Credit Co. (In re Spears)*, 223 B.R. 159 (Bankr. N.D. Ill.
1998); *Massey v. Chrysler Fin. Corp. (In re Massey)*, 210 B.R.
693, 696 (Bankr. D. Md. 1997); *In re Richardson*, 135 B.R. 256
(Bankr. E.D. Tex. 1992). *See also TranSouth Fin. Corp. v. Sharon
(In re Sharon)*, 234 B.R. 676, 688 (B.A.P. 6th Cir. 1999)
(Stosberg, J., dissenting).

B.

<u>The Contrary Majority View</u>

There are decisions constituting a majority view to the

contrary, including three at the court of appeals level, *Weber v.*

*SEFCU (In re Weber)*, 719 F.3d 72 (2d Cir. 2013); *Thompson v. Gen.*

*Motors Acceptance Corp., LLC*, 566 F.3d 699 (7th Cir. 2009); and

*Knaus v. Concordia Lumber Co., Inc. (In re Knaus)*, 889 F.2d 773

(8th Cir. 1989),[2] and others at lower levels.[3]  Those decisions

largely fail to address the analysis I set forth in *Bernstein*,

and they have been persuasively criticized by Professor Ralph

Brubaker in a trenchant and cogent two-part analysis:

- *Turnover, Adequate Protection, and the Automatic Stay
  (Part I): Origins and Evolution of the Turnover Power*,
  33 No. 8 Bankruptcy Law Letter NL 1 (August 2013)
  (hereinafter "Brubaker, *Part I*"); and

- *Turnover, Adequate Protection, and the Automatic Stay
  (Part II): Who is "Exercising Control" Over What?*, 33
  No. 9 Bankruptcy Law Letter NL 1 (September 2013)
  (hereinafter "Brubaker, *Part II*").

As stated in Brubaker, *Part II* at 1, "[t]he majority position is

highly dubious, . . . and seems driven more by certain 'practical

---

[2] In *Cal. Emp't Dev. Dep't v. Taxel (In re Del Mission
Ltd.)*, 98 F.3d 1147, 1149-50 (9th Cir. 1996), the court of
appeals made loose observations in dicta that are consistent with
the majority view, but that are not an actual holding adopting
the majority view because the case involved a *postpetition*
seizure of property.  *See Fitch*, 217 B.R. at 290-91.

[3] *See, e.g., Unified People's Fed. Credit Union v. Yates
(In re Yates)*, 332 B.R. 1, 4 (B.A.P. 10th Cir. 2005); *TranSouth
Fin. Corp. v. Sharon (In re Sharon)*, 234 B.R. 676 (B.A.P. 6th
Cir. 1999).

considerations' (as the courts themselves have put it) than a
sound, principled interpretation of the meaning of the relevant
Code provisions."  I elaborate at length below why the majority
view is in error, and why the reasoning of *Inslaw* continues to be
sound, and requires the conclusion that there was no violation
here of § 362(a)(3).

III

THE MAJORITY VIEW RESTS ON THE ERRONEOUS
CONCLUSION THAT 11 U.S.C. § 542(a) IS SELF-EXECUTING

The majority view of § 362(a)(3), espoused by *Weber* and its
ilk, is premised on an erroneous interpretation of one of the
"turnover" provisions of the Bankruptcy Code.  Specifically,
courts that follow the majority view contend that 11 U.S.C.
§ 542(a) is "self-executing" and "requires that any entity in
possession of property of the estate deliver it to the trustees
[sic], without condition or any further action . . . ."  *Weber*,
719 F.3d at 79.  *Weber* then reasons that, notwithstanding that
the debtor is not actually in possession of the property on the
petition date, the self-executing nature of § 542(a) operates to
vest the debtor with a possessory interest in the property such
that a creditor's continued retention of possession constitutes

an act to "exercise control" over property of the estate. *Id.*[4]
A careful analysis, however, demonstrates that § 542(a) is *not*
self-executing.

Section 542(a) was part of the Bankruptcy Code as enacted in
1978, and has remained the same since then.   In *United States v.
Whiting Pools, Inc.*, 462 U.S. 198 (1983), *aff'g* 674 F.2d 144 (2d
Cir. 1982), a case relied upon heavily by courts following the
majority view, the Court explored the effect of § 542(a) and
whether a court could subject the IRS to a turnover order for
property that had been seized prepetition, but not yet sold at a
tax auction.   It was not until the following year, 1984, that
Congress amended § 362(a)(3) to extend the stay to "any act . . .
to exercise control over property of the estate."[5]   Accordingly,
to understand why *Whiting Pools* cannot be read to support the
view that creditors violate the automatic stay under § 362(a)(3)
if they fail immediately, upon the debtor's filing of the
petition, to return property that was seized from the debtor
prepetition, it is relevant to explore whether § 542(a) was
viewed as self-executing prior to the 1984 amendment of

---

[4]   *See also, e.g., Yates*, 332 B.R. at 4, in which the court
reasoned that "the interplay between § 362(a) and § 542(a)"
required the conclusion that "a creditor's retention of property
of the estate after a debtor files for bankruptcy constitutes an
'exercise of control' in violation of the automatic stay."

[5]   Section 362(a)(3) was amended by § 441 of the Bankruptcy
Amendments and Federal Judgeship Act, Pub. L. No. 98-353, 98
Stat. 333 (1984).

§ 362(a)(3), the context in which *Whiting Pools* was decided.  It

was not, and as will be seen, none of the language of § 362(a)(3)

suggests that Congress meant by its amendment to change the

meaning and operation of § 542(a).

With exceptions of no relevance here, § 542(a) provides

that:

> an entity . . . in possession, custody, or control,
> during the case, of property that the trustee may use,
> sell, or lease under section 363 of this title, or that
> the debtor may exempt under section 522 of this title,
> shall deliver to the trustee, and account for, such
> property or the value of such property, unless such
> property is of inconsequential value or benefit to the
> estate.

Sometimes a debtor is vested with a trustee's rights under

§ 542(a).[6]  For simplicity's sake, I will analyze what rights

§ 542(a) confers on a trustee, but that analysis applies as well

---

[6]  These are the instances in which a debtor is vested with
the trustee's rights under § 542(a):

- In a Chapter 11 case in which no trustee has been
  appointed, the debtor acts as a debtor in possession
  pursuant to 11 U.S.C. § 1101(1), and is vested with a
  trustee's rights under § 542(a) pursuant to 11 U.S.C.
  § 1107(a).

- In a Chapter 13 case, 11 U.S.C. §§ 1303 and 1304
  generally confer on a debtor the rights of a trustee to
  use, sell, or lease property under 11 U.S.C. § 363, and
  11 U.S.C. § 1306(b) provides that the debtor (in
  contrast to the trustee), with an exception of no
  relevance here, "shall remain in possession of all
  property of the estate."  These provisions have been
  viewed as vesting a debtor with a trustee's rights
  under § 542(a) to obtain possession of property that
  the trustee "may use, sell, or lease under section 363
  . . . ."

8

to a debtor when a debtor is vested with a trustee's rights under
§ 542(a).

In contrast to the automatic stay of § 362(a), § 542(a) does
not provide that it is to operate as an order (which would carry
with it the consequence that it could be enforced by contempt
sanctions), and the provision is subject on its face to defenses
(with an additional defense against entry of a turnover order, of
lack of adequate protection, being contained in 11 U.S.C.
§ 363(e)).  For those reasons, and other reasons explored below,
the statute was not viewed as self-executing prior to the 1984
amendment of § 362(a)(3) and continues to be not self-executing.

A.

Section 542(a) Codified the Pre-Code Practice of
Turnover Being Compelled by Entry of a Turnover Order

As explained in *Inslaw*, 932 F.2d at 1471:

the Code's "turnover" provisions . . . allow the trustee
to recover property that "was merely out of the
possession of the debtor, yet remained 'property of the
debtor.'"  House Report at 367; Senate Report at 82, U.S.
Code Cong. & Admin. News 1978, pp. 5868, 6323; see 11
U.S.C. §§ 542, 543 (turnover provisions); *Whiting Pools*,
462 U.S. at 204-09 & n.11, 103 S.Ct. at 2313-16 & n.11.

The purpose of § 542(a), therefore, "is to empower the trustee in
bankruptcy to get hold of the property of the debtor, some of
which will be in the possession, custody, or control of third
parties."  *Boyer v. Carlton, Fields, Ward, Emmanuel, Smith &
Cutler, P.A. (In re USA Diversified Prods., Inc.)*, 100 F.3d 53,
56 (7th Cir. 1996).  The statute thus permits an entity in

9

possession of estate property voluntarily to relinquish
possession of such property to the trustee in lieu of turning
over the property to a debtor who lacks the rights of a trustee.

When possession is not relinquished voluntarily, § 542(a)
empowers the trustee to obtain an order directing turnover unless
one of the defenses to entry of a turnover order applies.  But
unlike § 362(a), which operates as a statutory injunction,
§ 542(a) does not operate as a statutory injunction and thus does
not enjoy the status of an order as to which contempt sanctions
may lie if disobeyed.  Instead, § 542(a) codified the pre-Code
practice, exemplified by *Reconstruction Fin. Corp. v. Kaplan*, 185
F.2d 791 (1st Cir. 1950), under which the court could order
turnover by a secured creditor in possession of collateral seized
prepetition, but with turnover conditioned on provision of
adequate protection.  After tracing that pre-Code practice, and
the Court's embrace of that practice in *Whiting Pools*, Brubaker,
*Part I* at 4-5,[7] persuasively concludes that § 542(a) is *not* self-
executing:

> The legislative history of the Code § 542(a) turnover
> provision has been the subject of careful scholarly
> study, including by Judge Friendly in his Second Circuit

---

[7]  The endnotes to this quote have been included below as
footnotes, with any changes or additions made by me appearing in
brackets.

opinion in *Whiting Pools*.[8]   Indeed, the Supreme Court
commented that "we find Judge Friendly's careful analysis
of this history for the Court of Appeals to be
unassailable,"[9] and Judge Friendly's analysis ultimately
concluded that the most "natural reading of § 542 is that
it was intended to codify *RFC v. Kaplan*,"[10] which was
representative of the pre-Code practice pursuant to which
"the bankruptcy court could order the turnover of
collateral in the hands of a secured creditor."[11]

Indeed, more generally, Code § 542(a) "gives an
explicit statutory basis for the traditional turnover
order against persons other than the debtor."[12]  As the
Supreme Court explained the traditional turnover power in
*Maggio v. Zeitz*, it was a use of the bankruptcy court's
general equitable powers under the statutory predecessor
to Code § 105(a) to enforce the debtor's statutory
turnover obligation under the predecessor to Code
§ 521(4) [re-numbered § 521(a)(4) in 2005].[13]  With
codification of a correlative turnover obligation for
third parties in possession of property of the estate in

---

[8]   *See Whiting Pools*, 674 F.2d at 152-56.  *See also* Plank,
59 Md. L. Rev. at 292-307 [citing to Thomas E. Plank, *The
Creditor in Possession Under the Bankruptcy Code: History, Text,
and Policy*, 59 Md. L. Rev. 253, 393-407 (2000)]. [Brubaker, *Part
I* at 9 n.30.]

[9]   *Whiting Pools*, 462 U.S. at 207 n.16. [Brubaker, *Part I* at
9 n.31.]

[10]   *Whiting Pools*, 674 F.2d at 155. [Brubaker, *Part I* at 9
n.32.]

[11]   *Whiting Pools*, 462 U.S. at 208.  "Nothing in the
legislative history evinces a congressional intent to depart from
that [pre-Code] practice."  *Id.*  Thus, "the bankruptcy court
generally has power under § 542 to order the turnover of property
repossessed or executed upon by a secured creditor . . .
following the debtor's default and prior to his bankruptcy."
*Whiting Pools*, 674 F.2d at 156. [Brubaker, *Part I* at 9 n.33.]

[12]   Plank, 59 Md. L. Rev. at 303 (footnotes omitted).
[Brubaker, *Part I* at 9 n.34.]

[13]   *See Maggio v. Zeitz*, 333 U.S. [56 (1948)] at 61-63.
[Brubaker, *Part I* at 9 n.35.]

§ 542(a), then, bankruptcy courts can use their § 105(a) equitable powers to enter an injunctive turnover order against third parties as "necessary or appropriate to carry out the provisions of" § 542(a).[14]

The most noteworthy implication of this historical perspective on the intended function of § 542(a)—the perspective that the Supreme Court itself promulgated in *Whiting Pools*—is that "§ 542(a) is *not* self-executing."[15] It simply provides an express statutory basis for a bankruptcy court to enter an injunctive order compelling turnover of identified property in the possession of a third party. Consistent with the pre-Code turnover practice that § 542(a) was intended to codify, then, a third party's mere possession of that property, in and of itself (before entry of any turnover order), does not contravene any injunctive orders of the court; only a knowing violation of a duly entered turnover order is contemptuous conduct. Indeed, if § 542(a) were itself a self-executing injunctive order, a subsequent turnover order would be entirely unnecessary. "Injunctions . . . are *not* enforced by further injunctions; injunctions are enforced by contempt citations."[16]

B.

Prior to the Amendment of § 362(a)(3),
Courts Viewed § 542(a) as Not Self-Executing

After the enactment of § 542(a) in 1978, and prior to the amended version of § 362(a)(3) at issue here taking effect in 1984, no court viewed § 542(a) as a mandatory injunction for which contempt might lie. Instead, courts *uniformly* viewed

---

[14]   11 U.S.C.A. § 105(a). [Brubaker, *Part I* at 9 n.36.]

[15]   *Bernstein*, 252 B.R. at 849 (emphasis added). [Brubaker, *Part I* at 9 n.37.]

[16]   Ralph Brubaker, *Of State Sovereign Immunity and Prospective Remedies: The Bankruptcy Discharge as Statutory Ex parte Young Relief*, 76 Am. Bankr. L.J. 461, 555 (2002). [Brubaker, *Part I* at 9 n.38.]

§ 542(a) as providing bankruptcy courts with the authority to
order the turnover of collateral or other property of the estate,
but with the courts authorized to require adequate protection of
a secured creditor's interest before directing turnover. *See,
e.g., In re Riding*, 44 B.R. 846, 848-49 (Bankr. D. Utah 1984)
(decided *after* the Court decided *Whiting Pools*);[17] *Sunrise Equip.
& Dev. Corp. v. Pac. Am. Leasing Corp. (In re Sunrise Equip. &
Dev. Corp.)*, 24 B.R. 26, 27-28 (Bankr. D. Ariz. 1982).

Despite this judicial consensus regarding § 542(a), the
court in *Thompson*, 566 F.3d at 706, erroneously states that "at a
minimum, it appears that bankruptcy courts approved of differing
practices concerning adequate protection when *Whiting Pools* was
decided," quoting *In re Sharon*, 200 B.R. 181, 190-91 (Bankr. S.D.
Ohio 1996). As explained in *Bernstein*, 252 B.R. at 849 n.4, the
two cases that *Sharon* cited for that proposition did *not* show a
different practice. *See also* Brubaker, *Part II* at 3 & nn.9-10.
It may be inferred that the parties in *Thompson* neglected to cite
*Bernstein* in their briefs in the court of appeals.

---

[17] *Riding* was decided after § 362(a)(3) was amended, but
*Riding* arose in a bankruptcy case commenced before § 362(a)(3)
was amended. The amendment to § 362(a)(3) was inapplicable to
cases commenced before its effective date, and thus was not
applicable in *Riding*.

C.

### Section 542(a) Should be Treated Like its Sister Turnover Provision, § 542(b), as Not Being Self-Executing

This view of § 542(a) as not self-executing is required as well by another long-standing principle of statutory construction.  When sister provisions of a statute contain the same word, that word ought to be given the same meaning.[18]  That § 542(a) is not a self-executing mandatory injunction--despite its use of the word "shall"--is demonstrated by considering its sister provision, 11 U.S.C. § 542(b), which is not self-executing despite the use of the word "shall."  With exceptions of no relevance here, § 542(b) provides:

> an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, *shall* pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

"Section 542(b) is simply an acknowledgment that the trustee, not the debtor, is entitled to receive payment of monetary

---

[18]  *See Gutierrez v. Ada*, 528 U.S. 250, 255 (2000) ("words and people are known by their companions").  *See also Maracich v. Spears*, --- U.S. ---, ---, 133 S.Ct. 2191, 2201, 186 L.Ed.2d 275 (2013); *Bullock v. BankChampaign, N.A.*, --- U.S. ---, ---, 133 S. Ct. 1754, 1759-60, 185 L. Ed. 2d 922 (2013).  The principle applies in the case of the Bankruptcy Code.  *See Rake v. Wade*, 508 U.S. 464, 474, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993) ("[S]tatutory terms are often 'clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes [its] meaning clear . . . .'") (quoting *United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988)).

14

obligations owed to the debtor, not a self-executing provision
giving rise to contempt when the obligor fails to pay the
obligation to the trustee." *Bernstein*, 252 B.R. at 852 (citation
omitted). *See also In re Randolph Towers Coop., Inc.*, 458 B.R.
1, 6-7 (Bankr. D.D.C. 2011);[19] *Pardo v. Nylcare Health Plans,
Inc. (In re APF Co.)*, 274 B.R. 408, 417 (Bankr. D. Del. 2001)
(defendants' "post-petition conduct . . . was not an affirmative
action within the meaning of § 362(a)(3) or (a)(6).  Sections
(a)(3) and (a)(6) require more than a mere passive act of failing
to remit the Withheld Payments.").  Like § 542(b), its sister
provision, § 542(a) ought not be viewed as self-executing.

---

[19] *Randolph Towers* set forth numerous reasons why Congress
would not have intended § 542(b) to be a self-executing provision
enforceable via contempt sanctions.  It observed, for example,
that:

> Congress could not have intended to make contempt a
> weapon added to the trustee's arsenal to make it easier
> to collect accounts payable.  It would not have wanted to
> subject an account obligor to the risk that, if its
> arguments that the account obligation was not payable are
> rejected, it might be held in contempt.  That would deter
> the assertion of plausible grounds for non-payment that
> might be upheld (or at least pass muster under Rule 9011)
> if asserted.  Nor would Congress have wanted a trustee to
> have a contempt weapon available to only the trustee,
> giving the trustee a preference over other entities to
> whom the account obligor is indebted and who do not enjoy
> contempt as a collection tool.

*Randolph Towers*, 458 B.R. 1, 6-7 (Bankr. D.D.C. 2011).

D.

Viewed in the Context of the Bankruptcy
Code as a Whole, Including the Right to Adequate
Protection Under § 363(e), § 542(a) is Not Self-Executing

Even if in isolation the word "shall" in § 542(a) could be read as imposing a mandatory obligation of turnover, a court must "follow the cardinal rule that a statute is to be read as a whole since the meaning of statutory language, plain or not, depends on context." *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221, 112 S. Ct. 570, 116 L. Ed. 2d 578 (1991) (citations omitted).  It is thus necessary to interpret § 542(a) in light of other provisions of the Bankruptcy Code, and to strive for an interpretation of § 542(a) whose effects are compatible with the Bankruptcy Code as a whole.[20]

Interpreting § 542(a) as an order compelling turnover would be inconsistent with the Bankruptcy Code as a whole.  In particular, 11 U.S.C. § 363(e) provides in relevant part:

> *Notwithstanding any other provision of this section*, at any time, on request of an entity that has an interest in property used, sold, or leased, or *proposed* to be

---

[20]   "In determining the meaning of the statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." *Crandon v. United States*, 494 U.S. 152, 158 (1990).  *See also Samantar v. Yousuf*, 560 U.S. 305, 319, 130 S. Ct. 2278, 2289 (2010) ("We do not . . . construe statutory phrases in isolation; we read statutes as a whole." (quoting *United States v. Morton*, 467 U.S. 822, 828, 104 S. Ct. 2769, 81 L. Ed. 2d 680 (1984)); *Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. at 371 ("Statutory construction . . . is a holistic endeavor."); *Grogan v. Garner*, 498 U.S. 279, 287 n.13 (1991).

used, sold, or leased, by the trustee, the court . . .
shall *prohibit* or condition such use, sale, or lease as
is necessary to provide adequate protection of such
interest. . . .

[Emphasis added.][21]  The Court observed in *Whiting Pools*, 462

U.S. at 206 n.12, that one of the "explicit limitations on

§ 542(a)" is that "Section 542 provides that the property be

usable under § 363 . . . ."   Property "usable under § 363"

necessarily includes the limitation of § 363(e) that,

"[n]otwithstanding any other provision of this section," any

proposed use is subject to the trustee's obligation to comply

---

[21]  It is significant that in *Weber*, 719 F.3d at 81 n.8, the
court of appeals only partially quoted § 363(e), stating that it
provides, "[i]n relevant part" that:

> Notwithstanding any other provision of this section, at
> any time, on request of an entity that has an interest in
> property used, sold, or leased . . . by the trustee, the
> court, with or without a hearing, shall prohibit or
> condition such use, sale or lease as is necessary to
> provide adequate protection of such interest.

This quotation omits the critical words regarding property
"*proposed* to be used, sold, or leased" by the trustee.  [Emphasis
added.]  When property has been seized prepetition and not
voluntarily delivered to the trustee, the trustee can only be in
the posture of *proposing* to use, sell, or lease the property.

17

with any order issued by the court for adequate protection.[22]  As

observed in Brubaker, *Part II* at 5:

> Of course, the most prominent among the "explicit
> limitations on the reach of § 542(a)" that the Supreme
> Court specifically highlighted in *Whiting Pools* is "that
> the property be usable under § 363."[23]  By express
> incorporation of § 363, then, when the estate seeks
> turnover of property "*proposed* to be used, sold, or
> leased, by the trustee, the *court . . . shall prohibit or
> condition* such use, sale, or lease as is necessary to
> *provide adequate protection*" of the secured creditor's
> lien rights.[24]

If a creditor is required to turn over the asset before it

can seek adequate protection, it might be irreparably harmed and

lose the protection that § 363(e) is intended to provide.  *See*

*Bernstein*, 252 B.R. at 850-51.  Yet § 542(a), if treated as a

mandatory injunction, would compel immediate turnover, and would

result in the creditor being in contempt if it delayed making

turnover while it pursued a request for adequate protection.  The

Court in *Whiting Pools*, 462 U.S. at 211-12, expressly held that

---

[22]  *See* Charles J. Tabb, *The Law of Bankruptcy*, §3.6, at 263
(2d ed. 2009):

> Section 542(a) says only that an entity must turn over
> "property that the trustee may use . . . under section
> 363," and under § 363, in turn, the trustee may only use
> property in which a party has a lien on the condition
> that the trustee afford the lienholder "adequate
> protection" of its lien interest.  § 363(e).

[23]  Citing *Whiting Pools*, 462 U.S. at 206 & n.12.

[24]  Quoting 11 U.S.C. § 363(e) (italics and underscoring
added).

despite the applicability of § 542(a) to a secured creditor, that

creditor "under section 363(e), remains entitled to adequate

protection for its interests . . . ."  The Court reasoned that

"the right to adequate protection . . . replace[s] the protection

afforded by possession," *Whiting Pools*, 462 U.S. at 207, and

ruled that "[a]t the creditor's insistence, the bankruptcy court

must place such limits or conditions on the trustee's power to

sell, use, or lease property as are necessary to protect the

creditor." *Id.* at 204.  The right to adequate protection cannot

be destroyed by treating § 542(a) as self-executing and as

compelling turnover before the creditor can obtain an order

providing such adequate protection:

> As observed in *Citizens Bank of Maryland v. Strumpf*,
> 516 U.S. 16, 20, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995)
> (citation omitted): "[i]t is an elementary rule of
> construction that 'the act cannot be held to destroy
> itself.'"  The right of adequate protection cannot be
> rendered meaningless by an interpretation of §§ 362(a)(3)
> and 542(a) that would compel turnover even before an
> opportunity for the court's granting adequate protection.
> Those provisions no more operate to destroy the right to
> insist on adequate protection as a condition to turnover
> than did § 362(a)(3) destroy the right of setoff in
> *Strumpf*, 516 U.S. at 21, 116 S.Ct. 286.

*Bernstein*, 252 B.R. at 851.

Here are some examples of a right to adequate protection

that could be destroyed if immediate turnover were required:

- As a form of adequate protection, a lienholder has a

  right to have the debtor comply with its obligation to

  insure the collateral.  If immediate turnover were

19

required, an accident might result in the collateral
being destroyed, with no insurance proceeds recovered,
and the lien being rendered worthless.

- Similarly, if prepetition wages are the subject of a
prepetition garnishment lien, requiring release of the
garnishment lien would destroy the garnishment lien.
*See In re Giles*, 271 B.R. 903, 906-07 (Bankr. M.D. Fla.
2002).  *See also Miller v. Montgomery Kolodny Amatuzio
Dusbabek (In re Miller)*, 2011 WL 6217342, at *3 (Bankr.
D. Colo. Dec. 14, 2011) (holding that "the better view"
is that creditor may refuse to release garnished funds
to protect lien rights without violating automatic
stay).

- Another example is a lien that is perfected by
possession, a lien that would be destroyed upon
possession being relinquished.[25]

Even in the Eighth Circuit, despite the court of appeals
decision in *Knaus*, the Bankruptcy Appellate Panel has held that a

---

[25] Some decisions hold that, depending on state law, the
exception of § 362(b)(3) to the automatic stay sometimes applies
to a continued retention of collateral subject to a lien
perfected by possession.  *See, e.g., Hayden v. Wells (In re
Hayden)*, 308 B.R. 428 (B.A.P. 9th Cir. 2004).  However, absent a
turnover order, a continued retention of such property does not
violate § 362(a)(3) in the first place, thus mooting any
necessity of the creditor's engaging in an analysis of state law
to show that § 362(b)(3) applies to except it from § 362(a)(3).

secured creditor whose "relinquishment of possession will in and

of itself destroy the creditor's rights" is entitled to refuse to

deliver possession, despite § 542(a), until it is given adequate

protection.  *N. Am. Banking Co. v. Leonard (In re WEB2B Payment*

*Solutions, Inc.)*, 488 B.R. 387, 393 (B.A.P. 8th Cir. 2013).  As

Professor Brubaker observes:

> Carving out an exception for a secured creditor whose
> "relinquishment of possession will in and of itself
> destroy the creditor's rights," however, cannot (by any
> stretch of the imagination) be wrung from the language of
> § 362(a)(3).  If "'exercising control' over the object in
> which the estate's equitable [ownership] interest lay"
> [citing *Weber*, 719 F.3d at 79]—i.e., retaining
> possession—violates § 362(a)(3), that is the case whether
> or not the secured creditor's "relinquishment of
> possession will in and of itself destroy the creditor's
> rights."  As the *Sharon* majority acknowledged, "[t]here
> is *no* 'exception' to § 362(a)(3) that excuses . . .
> refusal to deliver possession." [Citing *Sharon*, 234 B.R.
> at 683 (emphasis added by Professor Brubaker).]

Brubaker, *Part II* at 7.

Accordingly, § 542(a) is not self-executing in light of a

creditor's right to raise its right to adequate protection as a

defense.  Any frivolous or bad faith assertion of the defense of

lack of adequate protection can be addressed via Rule 9011 of the

Federal Rules of Bankruptcy Procedure.[26]

---

[26] *See In re Dillard*, 2001 WL 1700026, at *3 (Bankr.
M.D.N.C. Apr. 17, 2001) ("While the creditor is entitled to
retain possession until adequate protection has been provided,
the creditor must act in good faith and risks the imposition of
sanctions by frivolously opposing turnover of property of the
estate that was repossessed pre-petition.").

21

E.

### _Weber_'s Reliance on _Collier on Bankruptcy_ is Misplaced

The _Weber_ court asserted that § 542(a) is "self-executing" and "requires that any entity in possession of property of the estate deliver it to the trustees, _without condition_ . . . ." 719 F.3d at 79 (emphasis added).  As authority for this view, _Weber_ cites and quotes _Collier on Bankruptcy_ § 542.02 (16th ed. 2012).  That reliance on _Collier on Bankruptcy_ is unpersuasive.

Before _Whiting Pools_ was decided in 1983 and § 362(a)(3) was amended in 1984, 4 _Collier on Bankruptcy_ § 542.02, at 542-6 (15th ed. 1980), stated (as quoted in _Alpa Corp. v. IRS (In re Alpa Corp.)_, 11 B.R. 281, 290 n.6 (Bankr. D. Utah 1981)) that "[t]he better view is . . . that adequate protection is a condition precedent to turnover if demanded by the creditor," consistent with the view that § 542(a) is not self-executing.  After _Whiting Pools_ was decided and at least as late as December 2003, and possibly as late as June 2009, _Collier on Bankruptcy_ continued to take that view:

> The Supreme Court's holding in _Whiting Pools_ confirms that a creditor in possession of collateral that the trustee may use, sell, or lease under section 363 must turn over the collateral to the trustee after commencement of the case, but may demand adequate protection as a condition precedent to turnover. [Footnote omitted.]  This is consistent with the requirement of section 363(e) that _at any time_ on request of a creditor, the court shall prohibit or condition the use, sale, or lease of property as is necessary to adequately protect the creditor's interest in the property.

5 *Collier on Bankruptcy* ¶ 542.02[2], at 542-11 to 542-12 (Alan N.

Resnick & Henry J. Sommer eds., 15th ed. rev. 2009).[27]   In the

footnote to the concluding sentence of this passage, it was

noted:

> a similar construction was placed on Section 257 of the
> Bankruptcy Act which entitled the trustee in a Chapter X
> case to "immediate possession" of all property in
> possession of a trustee under a deed of trust or a
> mortgagee under a mortgage.  Although the language of the
> statutes mandating immediate possession was absolute,
> courts construed the language to balance the harm to the
> second [sic: meant to say "secured"] creditor against the
> benefit to the debtor's reorganization. *See, e.g.*, *In re*
> Riker Delaware Corp., 385 F.2d 124 (3d Cir. 1967).

*Id.* at 542-12 n.31.  It is only sometime after 2003 that *Collier*

*on Bankruptcy* took the view that § 542(a) is self-executing, 5

*Collier on Bankruptcy,* ¶ 542.02 at 542-7 to 542-8 (Alan N.

Resnick & Henry J. Sommer eds., 16th ed. 2013), and then only

acknowledging in two footnotes that a contrary view exists.  *Id.*

at 542-7 n.9 & 542-8 n.11.  *Collier on Bankruptcy* does not

explain how § 542(a) could now be viewed as self-executing

despite its prior observations regarding the right to insist on

adquate protection under § 363(e) as a condition to turnover, and

---

[27]   *Collier on Bankruptcy* is a loose-leaf publication
updated periodically by dated releases.  The quoted text is found
in this court's chambers copy of the 15th ed. rev. 2009, and the
pages quoted from bear a release date of December 2003 (Rel. 88-
12/03).  The last update of that chambers copy was in June 2009
and unless there is a missing release in that chambers copy,
*Collier on Bankruptcy* was still taking the quoted position as
late as June 2009.

regarding the pre-Code practice.

F.

### On its Face, § 542(a) Does Not Require Turnover "Without Condition" and Thus is Not Self-Executing

How *Weber* could view § 542(a) as requiring turnover "without condition" is inexplicable.  On the face of § 542(a) alone, the statute does not require delivery to the trustee *without condition*.  Section 542(a) itself provides defenses to turnover:

- The statute does not compel turnover when the property is "of inconsequential value or benefit to the estate."

- Another defense is that the property is neither property "that the trustee may use, sell, or lease under section 363 of this title" nor property "that the debtor may exempt under section 522 of this title." This would be the case when the entity possessing the property disputes the debtor's ownership of the property.  As *Inslaw*, notes, 932 F.2d at 1472, "[i]t is settled law that the debtor cannot use the turnover provisions to liquidate contract disputes or otherwise demand assets whose title is in dispute." (Citations omitted.)

- In addition, a turnover claim is an equitable claim, *Burtch v. Ganz (In re Mushroom Transp. Co.)*, 382 F.3d 325, 337 (3d Cir. 2004), and based on equitable defenses, the court may deny turnover.  *See In re*

24

*Kabler*, 230 B.R. 525, 526 (Bankr. E.D.N.C. 1999)

(balancing equities in declining to order turnover).
If a party raises any of these defenses and the court rejects the defense, the party ought not be held in contempt for having done so.  As already noted, frivolous or bad faith assertion of a defense to entry of a turnover order can be addressed under Federal Rule of Bankruptcy Procedure 9011.

Illustratively, with respect to the defense that the property is not property of the estate, *Inslaw*, 932 F.2d at 1473 (citation and footnote omitted) stated:

> [I]t is difficult to believe that Congress intended a
> violation whenever someone already in possession of
> property mistakenly refuses to capitulate to a bankrupt's
> assertion of rights in that property.

Only upon entry of a turnover order adjudicating the estate's ownership of the property could there be a contempt for failing to turn over the property.[28]

The danger, under a view that § 542(a) is self-executing, is

---

[28]  Under the contrary majority view, however, the contempt proceeding would go forward, even though an issue of ownership remained to be decided, and even though the entity in possession of the property had always been willing to make turnover to the trustee if the bankruptcy court determined that the property is property of the estate.  *See*, *e.g.*, *SMB Grp., Inc. v. Diamond (In re SMB Grp., Inc.)*, No. CC-11-1610, 2012 WL 5419275, at *10 (B.A.P. 9th Cir. Nov. 7, 2012) (Bankruptcy Appellate Panel allowed a contempt proceeding to proceed against Diamond for failing to turn over property even though Diamond made clear that he would comply with a turnover order resolving the issue of ownership of the property).  A contempt proceeding injects additional issues, and additional expense, beyond what is entailed in a proceeding merely to determine ownership.

that an entity with a valid defense of being the owner of the
property might capitulate to the trustee's demand for turnover
instead of incurring the expense of a contempt proceeding and the
risk that the court might mistakenly reject its defense of
ownership, and hold it to have been in contempt.[29]  Congress
would not likely have intended that result.

If, upon rejecting a defense of ownership, or any other
defense to turnover, the court were to hold the entity that
asserted that defense to have been in contempt, the risk would be
that entities that have a valid or non-frivolous defense to
turnover under § 542(a) would be deterred by the threat of
contempt from raising the defense.  This would be the equivalent
of throwing out the baby (defenses that pass muster under Rule
9011) with the dirty bath water (defenses that do not pass muster
under Rule 9011).

Because § 542(a) is on its face subject to explicit
defenses, § 542(a) is not a self-executing statutory provision
that, without condition, compels turnover of estate property
possessed by a creditor.

---

[29]  Similarly, an entity in possession of property as to
which both the trustee and a third party claimed ownership might
be cowed by the threat of contempt into releasing the property to
the trustee.

G.

All of the Foregoing Demonstrates
That § 542(a) is Not Self-Executing

In conclusion, as observed in Brubaker, *Part II* at 4:

> The *Weber* court, therefore, was simply incorrect in its
> assertion that § 542(a) is "self-executing" and "requires
> that any entity in possession of property of the estate
> deliver it to the trustees, *without condition*."[30]  As the
> historical evolution of the turnover power clearly
> reveals, "§ 542(a) is not self-executing."[31]  And given
> that truism, it seems highly unlikely that Congress would
> indirectly impose a self-effectuating turnover obligation
> via § 362(a)(3) that exceeds the scope of the § 542(a)
> turnover provision.  Indeed, it is only by means of a
> post-hoc boot-strap, under the influence of the overly
> broad interpretation of § 362(a)(3), that the courts have
> misconstrued § 542(a) as somehow being self-executing
> when (on its face) it clearly cannot be, and its origins
> further confirm that conclusion.

I turn next to § 362(a)(3) itself.

IV

SECTION 362(a)(3) DOES NOT ALTER THE
NON-SELF-EXECUTING NATURE OF § 542(a) AND DOES NOT
COMPEL IMMEDIATE TURNOVER OF PROPERTY SEIZED PREPETITION

The majority view holds that mere retention of pre-existing

possession is an act to "exercise control" over property of the

estate in violation of § 362(a)(3).  This view cannot withstand

close scrutiny.

---

[30]  Citing *Weber*, 719 F.3d at 79 (emphasis added).

[31]  Citing Charles J. Tabb, *The Law of Bankruptcy*, §3.6, at
263 (2d ed. 2009).

27

A.

## The Majority View Disregards Established Practice

Prior to the ambiguous "exercise control" language being added to § 362(a)(3) in 1984, § 542(a) was plainly not self-executing, and the well-established practice was that turnover could be refused and the creditor could raise defenses to turnover before being required to relinquish possession.  The Court "will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure." *Cohen v. de la Cruz*, 523 U.S. 213, 221 (1998) (citation omitted).  Nothing in § 362(a)(3) purports to amend § 542(a).  Moreover, there is no evidence of a congressional intent to undo the well-established practice that a secured creditor could raise defenses before being required to make turnover.  The majority view, treating mere retention of possession as being prohibited, runs counter to the presumption against such a major departure from established practice.  *See Dewsnup v. Timm*, 502 U.S. 410, 419 (1992); Brubaker, *Part II* at 2-3.

B.

## § 362(a)(3) Contemplates a Postpetition Act

Section 362(a)(3) stays "any *act* to obtain possession of property of the estate . . . or *to exercise control* over property of the estate."  This language does not require relinquishment of

28

possession obtained prepetition.  First, "[t]he automatic stay, as its name suggests, serves as a restraint only on acts to gain possession or control over property of the estate."  *Inslaw*, 932 F.2d at 1474.[32]

Second, the "act . . . to exercise control" language itself suggests that an affirmative act of exercising control is required.  *See Beker Indus. Corp. v. Fla. Land and Water Adjudicatory Comm'n (In re Beker Indus. Corp.)*, 57 B.R. 611, 626 (Bankr. S.D.N.Y. 1986) (emphasis added):

> [T]he legislative history to § 362(a)(3), when enacted as part of the Bankruptcy Reform Act of 1978, P.L. 95-598, reveals that this branch of the automatic stay "applies to prevent dismemberment of the estate and to assure its orderly distribution." *Securities and Exch. Comm. v. First Fin. Group of Tex.*, 645 F.2d 429, 439 (5th Cir. 1981); *cf. In re Lawson Burich Associates*, 31 B.R. at 609-10.  Since **an act designed to change control of property** could be tantamount to obtaining possession and have the same effect, it appears that § 362(a)(3) was merely tightened to obtain full protection . . . .

---

[32] A similar view was expressed in 3 Collier on Bankruptcy ¶ 362.03[5], at 362-20, 21 (Lawrence P. King ed., 15th ed. 1997) (footnotes omitted) (as quoted in *In re Stinson*, 221 B.R. 726, 730 (Bankr. E.D. Mich. 1998) (emphasis added by me):

> Section 362(a)(3) *stays all actions*, whether judicial or private, *that seek* . . . to exercise control over property of the estate . . . .  The stay applies to *attempts to obtain control* over both tangible and intangible property.

*Collier on Bankruptcy* now takes a different view, *see* 3 Collier on Bankruptcy ¶ 362.03[5], at 362-29 (Alan N. Resnick & Henry J. Sommer eds. 16th ed. 2013), relying on *Thompson*, *Del Mission*, and *Knaus*, but it is noteworthy that, as discussed earlier in this decision, at one point *Collier* seems to have held a view similar to that expressed in *Inslaw*.

Unlike 11 U.S.C. § 521(a)(6), requiring that a debtor in certain circumstances "shall . . . not retain possession of [certain] personal property" unless the debtor takes certain actions, § 362(a)(3) does not provide that a creditor shall not retain possession of collateral seized prepetition. *See Young*, 193 B.R. at 624-25.

Third, § 362(a)(3) addresses the issue of possession by barring acts "to obtain possession," thus suggesting that the "exercise control" language in § 362(a)(3) "prohibits only affirmative conduct directed at 'control' rather than 'possession' of estate property." Brubaker, *Part II* at 3-4.  As noted in Brubaker, *Part II* at 3:

> use of the word "control" in the 1984 amendment to § 362(a)(3) suggests that the drafters meant to distinguish the newly prohibited "control" from the already-prohibited acts to obtain "possession," in order to reach nonpossessory conduct that would nonetheless interfere with the estate's authority over a particular property interest. Indeed, the legislative history explaining the originally enacted version of § 362(a)(3) also suggested such a distinction, although the original statutory language clearly did not address nonpossessory "control."[33]

_____

[33]   In the accompanying endnote, Brubaker notes that:

> In explaining the clause prohibiting any "act to obtain possession . . . of property from the estate," both the House and Senate Reports described this provision as designed to protect "property over which the estate has control *or* possession." S. Rep. No. 95-989, at 50 (1978) (emphasis added); H.R. Rep. No. 95-595, at 341 (1977) (emphasis added).

Brubaker, *Part II* at 10 n.12.

Examples of why the "exercise control" language was necessary for
reasons other than forcing turnover in derogation of a secured
creditor's rights under §§ 542(a) and 363(e) abound.  *See*
Brubaker, *Part II* at 3-4 & 10 nn.15-16.  *See also* 1 David G.
Epstein, *et al.*, *Bankruptcy* § 3-14, at 163 (1992):

> A common example is exercising control of intangible
> property rights that belong to the estate, such as
> contract rights or causes of action. These rights are
> incapable of real possession unless they are reified.
> Yet, (a)(3) preserves and guards against interference
> with them by staying any act to exercise control over
> estate property.

Accordingly, the language of § 362(a)(3) itself demonstrates that
it ought not be interpreted as requiring relinquishment of
possession obtained prepetition.

### C.

### The Majority View Violates Other
### Principles of Statutory Interpretation

Even if § 362(a)(3) is sufficiently ambiguous that, standing
alone, it could be interpreted as requiring relinquishment of
possession obtained prepetition, other principles of statutory
interpretation require that it not be given that interpretation.

First, as explained in part III(D), above, "[i]t is an
elementary rule of construction that 'the act cannot be held to
destroy itself,'" *Strumpf*, 516 U.S. at 20 (citation omitted), and
the amendment of § 362(a)(3) ought not be viewed as destroying
the secured creditor's rights under §§ 542(a) and 363(e), as
upheld in *Whiting Pools*, 462 U.S. at 211-12, to raise defenses to

31

turnover, including the right to seek adequate protection that
would be lost if relinquishment of possession were compelled by
§ 362(a)(3) without the necessity of a turnover order.

Moreover, "interpretations of a statute which would produce
absurd results are to be avoided if alternative interpretations
consistent with the legislative purpose are available." *Griffin
v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982).  This
would be the case even if § 362(a)(3) had a seemingly plain
meaning (which it does *not*) supporting the majority view.  *See
id.* at 571 (plain meaning will be rejected in "rare cases [in
which] the literal application of a statute will produce a result
demonstrably at odds with the intentions of its drafters . . .
.").  If the majority view of § 362(a)(3) were to prevail, it
would lead to the absurd result that when turnover is not
required under § 542(a) (for example, when the creditor is able
to establish the defense under § 542(a) that the property is of
inconsequential value or benefit to the estate or that its lien
is not adequately protected), nevertheless the failure to have
delivered the property to the trustee would constitute a stay
violation.  *See* Brubaker*, Part II* at 4.

This is well illustrated by *Expeditors Int'l of Wash., Inc.
v. Colortran, Inc. (In re Colortran, Inc.)*, 210 B.R. 823 (B.A.P.
9th Cir. 1997), *aff'd in part and vacated in part on other
grounds*, 165 F.3d 35 (9th Cir. 1998).  There, the creditor,

Expeditors, was held to have violated § 362(a)(3) by refusing to turn over property unless its debt was paid even though the possessory lien it held would have been destroyed had it released the property. *Colortran*, 210 B.R. at 827.[34]  The panel in *Colortran* was led down this erroneous path because of its mis-reading of *Del Mission* (which was a *postpetition* seizure case) as holding that § 542(a) is self-executing and requires a creditor who obtained possession of the debtor's property *prepetition* to release the property to the trustee without a turnover order.[35]

---

[34]  In the stay violation litigation, the validity of the lien, and Expeditors' good faith in asserting that it had a lien, were treated as irrelevant. *Colortran*, 210 B.R. at 827. Expeditors was eventually held in a later decision to have had a valid lien. *See Expeditors Int'l of Wash., Inc. v. Citicorp N. Am., Inc. (In re Colortran, Inc.)*, 218 B.R. 507, 513 (B.A.P. 9th Cir. 1997) ("the lien Expeditors asserts is valid").

[35]  The court of appeals' decision in *Colortran*, a puzzling unpublished decision that the court of appeals required not be cited as precedent in the Ninth Circuit, was de facto a victory for the creditor.  Although the court of appeals, without explanation, stated that it was affirming the holding that the creditor had violated § 362(a)(3), that amounted to unnecessary dicta because the court held that there was no statutory basis for awarding sanctions.  It held 11 U.S.C. § 362(h) (re-numbered § 362(k) in 2005) inapplicable to the debtor as a corporation and, without explanation, it vacated the Bankruptcy Appellate Panel's remand of the proceeding to the bankruptcy court to consider contempt sanctions under 11 U.S.C. § 105(a). Accordingly, the creditor had no reason to seek reconsideration in the court of appeals.  On remand, the bankruptcy court docket reflects that the bankruptcy court refunded the creditor's appeal bond, and awarded no damages.

D.

### Retaining Possession of Property Seized Prepetition is Not an Exercise of Control Over a Possessory Interest Held by the Estate

When a creditor holds property it seized prepetition, the debtor does not possess the property.  Accordingly, the creditor's continued retention of possession is not an exercise of control over any existing possession by the debtor of the property.

Stated another way, interests in property that the debtor holds on the petition date do not include possession of property held, instead, by a creditor.  Accordingly, possession is not an interest in property that becomes property of the estate under 11 U.S.C. § 541(a)(1) upon the commencement of the case.  If a trustee succeeds in obtaining turnover under § 542(a), then possession becomes an interest that *is* property of the estate by reason of 11 U.S.C. § 541(a)(7) (property of the estate includes "[a]ny interest in property that the estate acquires after the commencement of the case.").  Before then, possession is *not* an interest of the debtor in property constituting property of the estate.  Accordingly, a creditor's continued retention of possession is not an exercise of control over a right of possession that is property of the estate.

Section 542(a) is not itself a property interest, but instead a codification of pre-Code practice authorizing voluntary turnover to the trustee and empowering a trustee to pursue a

34

turnover proceeding in which the creditor may raise any available
defenses if unwilling voluntarily to surrender possession.  A
refusal to acquiesce in the trustee's view that she is entitled
to turnover under § 542(a) is thus not an act to exercise control
over property of the estate.  *See Inslaw*, 932 F.2d at 1473
(mistaken refusal to capitulate to a turnover demand is not a
violation of § 362(a)(3)).

It is in that context that one must read the Court's
observation in *Whiting Pools* that:

> In effect, § 542(a) grants to the estate a possessory
> interest in certain property of the debtor that was not
> held by the debtor at the commencement of reorganization
> proceedings.  The Bankruptcy Code provides secured
> creditors various rights, including the right to adequate
> protection, and these rights replace the protection
> afforded by possession.

462 U.S. at 207 (footnote omitted).  In the accompanying footnote
(462 U.S. at 207 n.15), the Court viewed § 542(a) as "consistent
with other provisions of the Bankruptcy Code that address the
scope of the estate," citing §§ 544, 545, and 549.  When a
trustee avoids a transfer of property pursuant to one of those
provisions, that results in the property becoming property of the
estate, by reason of 11 U.S.C. § 541(a)(3)[36] and (7), only once

---

[36]  Section 541(a)(3) includes as property of the estate
"[a]ny interest in property that the trustee recovers under
section 329(b), 363(n), 543, 550, 553, or 723 of this title."
Section 550, in turn, is the provision permitting recovery of a
transfer avoided under § 544, § 545, or § 549.  Such recoveries
are also made property of the estate by the more general language
of § 541(a)(7).

the trustee prevails in avoiding the transfer of property at issue. *See, e.g., In re Colonial Realty Co.*, 980 F.2d 125, 131 (2d Cir. 1992), and other decisions cited in Brubaker, *Part II* at 6 & 10 n.30. Accordingly, the Court's statement that § 542(a) effectively grants the estate a possessory interest must be read in the context of the entire decision in *Whiting Pools* as meaning that it grants a right of possession to the trustee subject to the procedural protections that the creditor enjoys, including the creditor's right to raise defenses explicitly mentioned in § 542(a) itself and the right to seek adequate protection under § 363(e).

*Weber* reasons that "*Whiting Pools* teaches that the filing of a petition will generally transform a debtor's equitable [ownership] interest into a bankruptcy estate's possessory right. . . ." *Weber*, 719 F.3d at 79. That possessory right, however, is the procedural right under § 542(a) to obtain a turnover order abrogating the creditor's possession held on the petition date. Until such a turnover order is entered, the estate lacks actual possession, and possession only becomes property of the estate under § 541(a)(7) upon the trustee actually obtaining possession.

In *Whiting Pools*, the Court stated that

§ 541(a)(1) is intended to include in the estate any property made available to the estate by other provisions of the Bankruptcy Code. See H.R. Rep. No. 95-595, p. 367 (1977). Several of these provisions bring into the estate property in which the debtor did not have a possessory interest at the time the bankruptcy

36

proceedings commenced.
      Section 542(a) is such a provision.

462 U.S. at 205.  In the accompanying footnote, n.10, the Court

mentioned §§ 543, 547, and 548 as examples of such provisions.

As observed in Brubaker, *Part II* at 5-6, the dictum quoted above,

and the implication that § 542(a) vests the estate with

possession as of the commencement of the case, are false:

§ 541(a)(1) is limited to "all legal or equitable interests of

the *debtor* [not of the trustee] in property *as of the*

*commencement of the case*."  (Emphasis added.)  Instead,

§§ 541(a)(3) and 541(a)(7) are the provisions that include in the

estate a possessory interest in property recovered pursuant to

§§ 542, 543, 547, and 548, and they do not purport to make

possession of the recovered property an interest of the estate in

property until there is an actual recovery.  The Court itself

noted that § 541(a)(1) would render § 542(a) "largely

superfluous" unless the latter statute conferred on the estate

rights which the debtor did not hold as of the commencement of

the case.  *Whiting Pools*, 462 U.S. at 207 n.15.

    The Court's erroneous dictum as to what § 541(a)(1) is

intended to include in the estate can be explained by the

legislative history it cites, which stated that the scope of

paragraph (1) of subsection (a) of § 541:

> is broad.  It includes all kinds of property . . .
> currently specified in section 70a of the Bankruptcy Act
> . . ., [as well as] property recovered by the trustee

37

> under section 542 . . . if the property recovered was
> merely out of the possession of the debtor, yet remained
> "property of the debtor."

*Whiting Pools*, 462 U.S. at 205 nn.9 & 11 (quoting H.R. Rep. No.

95-595, p. 367 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5868,

6323).  That legislative history, however, related to a version

of the proposed Bankruptcy Code prior to the addition of

§ 541(a)(7).  As observed in the floor statements relating to the

revised proposed § 541(a):

> Section 541(a)(7) is new.  The provision clarifies that
> any interest in property that the estate acquires after
> the commencement of the case is property of the estate[.]

*See* 124 Cong. Rec. H11096 (daily ed. Sept. 28, 1978) (statements

of Rep. Edwards); 124 Cong. Rec. S17413 (daily ed. Oct. 6, 1978)

(statements of Sen. DeConcini)).  It is § 541(a)(7), not

§ 541(a)(1), that hauls into the estate property recovered under

§ 542(a).[37]  The trustee's recovery of possession of property

under § 542(a) results in that possession being property of the

estate pursuant to § 541(a)(7) only once possession is

"recovered" and not when, at the outset of the case, it is merely

"recoverable" under § 542(a).  Section 542(a) does *not* vest the

estate with actual possession as of the petition date.

---

[37] As observed in *Barringer*, 244 B.R. at 407 n.3, the
Court's observation in *Whiting Pools* quoted above would have been
accurate if it had been limited to § 541(a) as a whole, so that
it read "§ 541(a) is intended to include in the estate any
property made available by other provisions of the Bankruptcy
Code."

Accordingly, even if a passive act of continuing to retain possession could be viewed as an act to exercise control, it is not an exercise of control over a present possessory interest that is property of the estate, and thus does not violate the automatic stay. *See Barringer*, 244 B.R. at 406-07. *See also Fitch*, 217 B.R. at 290 ("as of the date the petition was filed, the Debtor retained title to the car, but the right to possess the car remained with Autoflow and did not become property of the estate").[38]

As stated in Brubaker, *Part II* at 6:

> Thus, it may well be true that "[w]ithholding possession of property from a bankruptcy estate is the essence of 'exercising control' *over possession*," [quoting *Thompson*, 566 F.3d at 703 (quoting *Sharon*, 234 B.R. at 682) (emphasis added)] as the majority courts repeatedly (and tellingly) emphasize. But such an exercise of control over possession is a violation of the § 362(a)(3) automatic stay only if possession is property of the estate. When a secured creditor is in possession on the petition date, though, possession is not property of the estate, and possession only becomes property of the estate once the estate actually obtains possession via

---

[38] Even when the creditor has obtained possession *unlawfully*, the debtor's rights under nonbankruptcy law are to seek replevin or to exercise any right of self-help that exists under nonbankruptcy law. Those rights become property of the estate. The creditor's continued retention of the property postpetition does not constitute an exercise of control over those rights: the trustee is free to pursue those rights and the creditor's continued retention does not interfere with those rights. A creditor's continued retention of possession based on a mistaken view that it is lawfully in possession, and its exercise of its right to defend that it is lawfully in possession, ought not be viewed as having been an exercise of control over property of the estate once the court rejects its asserted defense. *See Bernstein*, 252 B.R. at 852-53.

turnover.

Moreover, treating continued retention of possession as a

forbidden exercise of control over property of the estate is

completely at odds with the proper view of § 542(a) as not being

a self-executing provision requiring turnover without awaiting

adjudication of whether any of the limits on turnover are

applicable.

E.

The Reliance of Some Decisions on 11 U.S.C.<br>§ 362(f) as Justifying the Majority View is Misplaced

Some decisions reason that a creditor who faces the prospect

of irreparable injury to its lien if it makes turnover without

conditions need not worry if § 542(a) is treated as self-

executing, with a failure to deliver the property to the trustee

punishable as an exercise of control over property of the estate

prohibited by § 362(a)(3), because the creditor can seek an

emergency hearing for relief from the automatic stay under 11

U.S.C. § 362(f).[39]   Before the Court decided *Strumpf*, lower
courts, including the court of appeals that was reversed by
*Strumpf*, that viewed § 362(a)(7) as imposing an obligation on a
creditor to turn over funds subject to a right of setoff
similarly viewed § 362(f) as a remedy available to creditors to
avoid the loss of a right of setoff if they first delivered to
the trustee the amounts owed as a debt.   *See Citizens Bank of
Maryland v. Strumpf (In re Strumpf)*, 37 F.3d 155, 157-58 (4th
Cir. 1994) ("If the creditor fears that the property subject to
the motion will suffer irreparable damage before notice and
hearing may be had, the creditor may even file an ex parte motion
under § 362(f).").   In the Supreme Court, the respondent, the
debtor Strumpf, argued:

> Although Citizens asserts that any filing of a request
> for relief from the § 362 stay would necessarily have
> alerted the Debtor to Citizens' intentions (and

---

[39]   *See Thompson*, 566 F.3d at 707:

> [T]he Bankruptcy Code already has a procedure in place to
> combat such a problem-the emergency motion.   Fed. R.
> Bankr. P. 4001(a)(2); *see also In re Colortran*, 210 at
> 827-28 ("If the creditor is concerned that its interest
> will be irreparably harmed if the property is turned over
> before the motion for relief from stay can be heard it
> may request an emergency hearing under § 362(f).").

*See also Stephens v. Guaranteed Auto, Inc. (In re Stephens)*, 495
B.R. 608, 613 (Bankr. N.D. Ga. 2013) (creditor could require the
debtor to provide proof of insurance as a condition to returning
the car only if the creditor "moves immediately in the bankruptcy
court for an order requiring adequate protection"); *Yates*, 332
B.R. at 7-8; *In re Jackson*, 251 B.R. 597, 600 (Bankr. D. Utah
2000); *Sharon*, 234 B.R. at 685-86.

> presumably would have triggered a withdrawal of funds
> from the account by the Debtor), Congress contemplated
> such a "banker's dilemma" when it enacted 11 U.S.C.
> § 362(f) of the Bankruptcy Code permitting the granting
> of ex parte relief from the stay as required to prevent
> irreparable damage to creditors such as Citizens.

Resp't Br. at 19. The respondent, *id.* at 19-20, then quoted this

observation from *B.F. Goodrich Emps. Fed. Credit Union v. Patterson*

*(In re Patterson)*, 967 F.2d 505, 511 (11th Cir. 1992):

> Creditors in this position have an alternative remedy and
> need not freeze debtors' accounts. The creditor may file
> an ex parte motion pursuant to Sections 362(f) or 363(e)
> and accompany this motion with the funds from the
> debtor's account to be paid into the registry of the
> bankruptcy court. This approach strikes the proper
> balance between the parties' interests. The creditor is
> protected from the risk that funds will be insufficient
> or unavailable to satisfy a later-determined valid right
> of setoff. The debtor is protected from the risk that a
> creditor will unilaterally deny the debtor access to
> funds in which the creditor does not have a valid right
> of setoff.

The absurdity of that approach was demonstrated by the *Patterson*

court's acknowledgment that the bank had only a 24-hour window

within which to seek ex parte § 362(f) relief, otherwise it would

violate the automatic stay if it refused to honor a check drawn on

the account:

> When a check is presented, however, the institution must
> make the determination whether to honor the check before
> midnight of the next banking day after it receives the
> check. See Ala. Code § 7-4-104(1)(h) (1975) (the
> "midnight deadline rule"). The midnight deadline rule
> provides the institution a small window in which to make
> its ex parte motion to the bankruptcy court.
> Nevertheless, this window is an alternative to the
> freeze, does not violate the automatic stay, and is
> readily available to banks in this predicament.

*Patterson*, 967 F.2d at 511.  The Court in *Strumpf* obviously did not view requiring banks to turn on a dime and seek § 362(f) relief in a 24-hour window as an adequate basis for upholding a view of the automatic stay that would otherwise destroy the right of setoff.  The Court in *Strumpf* rejected the court of appeals' view of §§ 362(a)(3) and 362(a)(7), stating "by forcing the creditor to pay *its* debt immediately, it would divest the creditor of the very thing that supports the right of setoff." 516 U.S. at 20.

Assume, here, that the majority view is correct that the creditor has an obligation under § 362(a)(3) to deliver to the trustee property seized prepetition, even though immediate delivery will result in a loss of adequate protection.  Unlike *Patterson*, there is no rule of law that allows the creditor *any* window of opportunity, not even a 24-hour window, to withhold possession while it pursues § 362(f) relief without being in violation of the automatic stay.  This further strengthens the case for rejecting § 362(f) as a basis for following the majority view that § 542(a) is self-executing, and that continued retention of possession violates § 362(a)(3).

Section 362(f) was already part of the Bankruptcy Code as it was enacted in 1978, with immaterial differences from today's

43

version.[40]  It is only when the creditor is in need of adequate
protection that it would have any reason to seek § 362(f) relief.
So long as the creditor possesses the property, the creditor
needs no such relief: its continued possession of the property
provides it adequate protection.  It is only when the debtor
files a request with the bankruptcy court to obtain turnover to
use, sell, or lease the property--a proposal contemplated by
§ 363(e) as one of the occasions upon which the creditor may
request adequate protection--that the creditor has a need to
request adequate protection of its lien.  As we have seen, prior
to the enactment of § 362(a)(3), no court viewed § 542(a) as
self-executing and as not allowing the creditor to refuse to make
turnover before it could request the court to condition any
proposed turnover on the provision of adequate protection of its
lien interest under § 363(e).  So long as the creditor had
possession of the property, § 362(f) was not a necessary tool.

   Section 362(b) lists most of the exceptions to § 362(a), and
neither it nor any other Bankruptcy Code provision lists the
pendency of a § 362(f) motion as an exception to § 362(a)(3).

---

[40]  Section 362(f) as enacted in 1978 provided:

The court, without a hearing, shall grant such relief
from the stay provided under subsection (a) of this
section as is necessary to prevent irreparable damage
to the interest of an entity in property, if such
interest will suffer such damage before there is an
opportunity for notice and a hearing under subsection
(d) or (e) of this section.

Moreover, § 362(f) itself does not purport to provide an
exception to § 362(a)(3).  Pending disposition of a § 362(f)
motion, there necessarily will be a period of time during which
(under the majority view) the creditor is in contempt for failing
to turn over property seized prepetition.  Accordingly, when
courts that follow the majority rule say that reasonably prompt
resort to § 362(f) will result in no violation of § 362(a)(3)
having occurred, that amounts to judicial legislation making
§ 362(f) an exception to the automatic stay when it is not.  Such
impermissible judicial legislation is an attempt to justify
treating the creditor's right to adequate protection of its
interest under § 363(e) as not a reason to view § 542(a) as *not*
self-executing.[41]

---

[41] Even if such judicial legislation were permissible, it
leaves it solely to the discretion of the bankruptcy court to
decide whether the creditor has moved reasonably promptly to seek
§ 362(f) relief.  A creditor who has a right to request adequate
protection of its lien interest cannot be expected to turn on a
dime.  Most creditors would need to seek the assistance of
counsel to file a § 362(f) motion.  Yet a creditor who delays for
even 15 days while it seeks assistance of counsel and while that
counsel explores the creditor's rights under the Bankruptcy Code
could be held not to have acted reasonably.  *See Mitchell v.
BankIllinois*, 316 B.R. 891, 900-01 (S.D. Tex. 2004) (creditor
violated the stay by waiting 15 days after the debtor demanded
the return of her vehicle to file a motion for relief from the
automatic stay).  Had Congress intended by § 362(a)(3) to make
§ 542(a) self-executing but to allow resort to § 362(f) as a way
of avoiding a violation of that self-executing obligation of
turnover, surely it would have set a deadline within which the
creditor was required to seek § 362(f) relief (similar to setting
deadlines as to other matters in, *e.g.*, 11 U.S.C. §§ 362(e)(1),
362(l)(1), 521(a)(6), and 521(i)) but it did not.

Because a creditor who has possession of collateral has no
need to seek adequate protection on an emergency basis, it is not
surprising that § 362(f) places no time limit on when a creditor
who has seized property prepetition may seek adequate protection
of its lien.  Instead, § 363(e) answers when the creditor must
seek adequate protection of its interest, namely, when the
trustee files a motion for turnover in order to engage in a
proposed use, sale, or lease of the property.  Section 363(e)
contemplates that, "notwithstanding any other provision" of § 363
the creditor "at any time" may request adequate protection of
"property proposed to be used."  In turn, § 542(a) contemplates
that the property must be property that the trustee may use under
§ 363, and, necessarily, notwithstanding any other provision of
§ 363, a creditor is entitled to request at any time adequate
protection of property the trustee proposes to use.

V

IT IS UNNECESSARY TO DECIDE WHETHER MANN
PROPERTIES AND CORAL SEAS VIOLATED 11 U.S.C. § 362(a)(6)

For all of the foregoing reasons, I conclude that there was
no violation of § 362(a)(3).  The record, however, additionally
raises an issue of whether Mann Properties and Coral Seas
violated 11 U.S.C. § 362(a)(6), which prohibits any "act to
collect, assess, or recover a claim against the debtor that arose
before the commencement of the case under this title."  It
remains unclear whether the act of Mann Properties and Coral Seas

46

in failing immediately to release the access code to the debtor
after he made a *postpetition* request for release to him of the
access code arose from a belief that Mann Properties and Coral
Seas had lien rights against the debtor's stored property.  When
a creditor has a lien on the debtor's property in its possession,
its refusal to release the property (and thereby to injure or
destroy its lien rights) unless the debt is satisfied is not a
violation of § 362(a)(6) but instead a recognition that under
nonbankruptcy law the lien remains intact unless the debt it
secures is fully paid.  Even when the creditor only believes but
does not actually have a lien on the property (or an ownership
interest in the property), turnover is not required absent a
turnover order for reasons discussed earlier in this decision
with respect to § 362(a)(3).

Even if Mann Properties and Coral Seas had no belief that
they held a valid lien against the debtor's stored property, the
record is unclear whether a 14-day delay in releasing the access
code to the debtor was a typical delay encountered by even a
member of the condo association who is current on her dues.
Accordingly, the record is unclear whether the failure
immediately to release the access code was a conscious step taken
by Mann Properties and Coral Seas, without believing that they
had a lien right in the debtor's stored property, to coerce
collection of unpaid prepetition condo dues that they have

47

asserted are owed in this case.  If that were the case, that may
have constituted a violation of § 362(a)(6).  *See In re Kuehn*,
563 F.3d 289, 294 (7th Cir. 2009).

However, I need not wrestle with the issue of whether there
was a violation of § 362(a)(6) for two reasons.  First, the
debtor's motion makes no mention of unpaid condo dues, and did
not allege that the withholding of the access code was an act to
collect unpaid condo dues.  His motion, therefore, did not state
a violation of § 362(a)(6).

Second, in his letter of November 27, 2012, the debtor
stated:

> If the code pertaining to the storage area is not forth
> coming within the next 5 business days I will file a
> motion to show cause as to why you and your client should
> be sanctioned for this apparent purposeful violation.

I view the debtor as having conceded at a hearing of December 17,
2013, that this amounted to an implicit offer not to file a
motion for sanctions if the access code was submitted within five
business days.  He conceded at the hearing that Mann Properties
and Coral Seas provided the access code to the debtor on November
29, 2012 (two days after the letter of November 27, 2012).
Finally, I view him as having conceded at the hearing that he had
therefore waived suing for a violation of the automatic stay.[42]

---

[42]   The waiver applies as well to the pursuit of sanctions
for violation of § 362(a)(3).

48

VI

CONCLUSION

For all of these reasons, the debtor's *Motion to Show Cause Why Sanctions Should Not Be Imposed on the Parties Named Below for Violating the Automatic Stay and Damages for False Imprisonment* (Dkt. No. 63) will be denied.  An order follows.

[Signed and dated above.]

Copies to: Debtor; recipients of e-notification.